## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELISA RIVERA, ADMINISTRATRIX OF THE ESTATE OF SAMANTHA FIGUEROA | ) ) ) | 3:23-CV-01353 (SVN) |
| *Plaintiff*, | ) ) | |
| v. | ) ) | July 25, 2025 |
| CONVOY, INC., PROCTER & GAMBLE DISTRIBUTING, LLC, PREMIER TRAILER LEASING, INC., PROWHEELER, LLC, TRANS TERRA EXPRESS, LLC, AND URIEL ESTRADA, *Defendants*. | ) ) ) ) ) ) | |

### JOINT RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO SUPPLEMENT SUMMARY JUDGMENT OPPOSITION

Sarala V. Nagala, United States District Judge.

In this diversity action, Plaintiff Elisa Rivera, Administratrix of the Estate of Samantha Figueroa, brings claims related to the death of Figueroa following a highway collision. The remaining Defendants are Uriel Estrada, the driver of a tractor trailer that collided with Figueroa; Prowheeler, LLC, a trucking company associated with Estrada; Convoy, Inc. ("Convoy"), a company that brokered a load of freight carried by Estrada; and Procter & Gamble Distributing, LLC ("P&G"), whose freight Estrada was carrying.[1] Compl., ECF No. 1-1 at 24–58.

Relevant here, Plaintiff brings four counts against Convoy: Count One ("Vicarious liability of broker Convoy, Inc. for negligent acts of motor carrier Prowheeler and Defendant Uriel

---

[1] The Court previously dismissed Plaintiff's claims against Premier Trailer Leasing, Inc. ("Premier"), which had leased to Convoy the trailer Estrada had been pulling. Ruling on Premier's Mot. to Dismiss, ECF No. 88. The Court ultimately terminated Premier from this action when Plaintiff failed to file an amended complaint to remedy the pleading deficiencies identified in the Court's ruling. *See* Order, ECF No. 90. Additionally, Plaintiff voluntarily dismissed Defendant Trans Terra, a trucking company associated with Estrada, from this action in October of 2024. *See* Order, ECF No. 104.

Estrada"); Count Two ("Estate's claim of negligence as to Convoy, Inc."); Count Three

("Negligence *per se* as to Defendant Convoy, Inc."); and Count Thirteen ("Estate's Claim of

vicarious liability for Defendant Prowheeler's negligence as to Convoy, Inc. pursuant to C.G.S. §

52-183 and 49 C.F.R. §§ 383.5 and/or 390.5").  Plaintiff also brings two counts against P&G:

Count Five ("Estate's claim of negligent hiring, selection, and retention as to P&G"); and Count

Six ("Estate's claim of vicarious liability for defendant Convoy, Inc.'s negligence as to Defendant

Procter & Gamble, pursuant to C.G.S. § 52-183").

Convoy and P&G both seek summary judgment as to all counts brought against them.

Plaintiff opposes these motions.  For the reasons set forth below, the Court GRANTS IN PART

AND DENIES IN PART Convoy's motion.  The Court finds summary judgment is appropriate

for Convoy on Counts One and Thirteen—Plaintiff's claims alleging vicarious liability—but is

inappropriate for Counts Two and Three, Plaintiff's direct negligence claims.  The Court also

GRANTS IN PART AND DENIES IN PART P&G's motion.  The Court grants P&G summary

judgment on Count Six, for vicarious liability, but finds that summary judgment is inappropriate

as to Count Five, Plaintiff's direct negligence claim.  Finally, the Court GRANTS Plaintiff's

motion to supplement her objection to her summary judgment opposition, ECF No. 199.

## **FACTUAL AND PROCEDURAL BACKGROUND**[2]

The remaining Defendants in this action operate in different roles in the trucking industry.

First, Prowheeler, LLC, was a "motor carrier," meaning a "person providing motor vehicle

transportation for compensation," 49 U.S.C. § 13102(14); Prowheeler's sole member was

Defendant and driver Uriel Estrada.  Pl.'s L.R. 56(a)(2) St. re: Convoy, ECF No. 183, ¶¶ 2–3.

---

[2] The factual background is taken primarily from Plaintiff's Local Rule 56(a)(2) Statements, ECF Nos. 183, 155-2
("Pl.'s L.R. 56(a)(2) St.").  Plaintiff's statements in these two local rule statements are substantially similar.  Unless
noted, all citations are to Plaintiff's Local Rule 56 Statement related to Defendant Convoy, ECF No. 183.
Additionally, the facts are undisputed, unless otherwise indicated.

Second, the parties agree that Convoy was a "broker," defined as a "person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier," 49 C.F.R. § 371.2, at all relevant times. *See id.* ¶ 1; *see also* 49 U.S.C. § 13102(2). As part of its brokerage services, Convoy maintained a phone application ("app") that connected shippers to motor carriers. ECF No. 183 ¶ 5. The parties disagree about whether Convoy could also be considered a "motor carrier" under the relevant laws. *See id.* ¶ 1.

The claims in this case stem from a fatal auto accident on October 25, 2021. On October 24, Estrada, in his capacity as Prowheeler's sole member, logged onto the Convoy app to accept delivery of a shipment of paper goods from a P&G warehouse in Pennsylvania to a destination in New Hampshire. *See id.* ¶¶ 6, 8. To haul the load, Prowheeler used a tractor it owned, *see* ECF No. 1-1, ¶ 51, and a trailer owned by Premier that Premier had leased to Convoy, and that Convoy in turn subleased to Prowheeler. ECF No. 183, ¶¶ 7, 9.

Figueroa, the decedent, left a friend's house at 3:15 a.m. on the day of the crash[3] to head to her home. *See id.* ¶ 17. It was dark, foggy, and rainy, resulting in reduced visibility on the roadway. *Id.* ¶ 24. Figueroa's vehicle became disabled on the Rochambeau Bridge on I-84 East near Newtown, Connecticut. *See id.* ¶¶ 18–19. Because of an ongoing construction project on the bridge, traffic patterns were altered; as a result, neither shoulder of I-84 East was wide enough to allow a disabled vehicle to completely be removed from the lanes of travel. *See id.* ¶¶ 20, 25. Figueroa's vehicle was stopped on the left-hand side of the road, with no observable lights on. *See*

---

[3] Convoy's Local Rule 56(a)1 Statement states that Figueroa watched movies at a friend's house from 11:30 P.M. on October 23, 2021, to 2:45 A.M. on October 24, 2021, and that Ms. Figueroa left her friend's house, en route to what would become the scene of the accident, early in the morning on October 24, 2021. *See* ECF No. 140-2 ¶¶ 13–17. Plaintiff admits these statements in her L.R. 56(a)2 Statement. *See* ECF No. 183, ¶¶ 13–17. But such a timeline is inconsistent with (1) Plaintiff's admission that Estrada accepted the load on October 24, 2021, and loaded the trailer at the P&G warehouse at 7:00 P.M. that evening, before the collision the next morning, *see id.* 183, ¶¶ 6–8; and (2) portions of the record that indicate that the crash occurred on October 25, 2021. *See, e.g.*, Police Report, ECF No. 140-1 at 360. As the particular date of the collision is immaterial to the present motions, the Court need not resolve this discrepancy.

*id.* ¶¶ 21, 22.  The vehicle was partially located on the left shoulder, but approximately three feet of the car's width extended into the far-left lane of travel.  *See id.*; *see also id.* ¶ 34.

Figueroa exited the vehicle after it had become disabled and stood in front of it, along its passenger side.  *See id.* ¶¶ 19, 23.  The truck driven by Estrada struck Figueroa's disabled vehicle, which, in turn, struck Figueroa.  *See id.* ¶ 31.[4]  Figueroa was taken to a hospital, where she was pronounced dead.  *See id.* ¶ 33.

According to a report prepared by the Connecticut State Police, no mechanical violations for the truck tractor or semi-trailer caused the crash.  *Id.* ¶ 32.  Instead, the State Police opined that causative factors of the accident included:  Figueroa's vehicle's loss of electrical power preventing it from either being moved or illuminated; the vehicle's hazardous location within both the left shoulder and left lane; and Figueroa's hazardous location as a pedestrian within the left lane along the front right portion of her vehicle.  *Id.* ¶ 34.  Plaintiff admits that these were the causative factors determined by the State Police, but denies the factors as causative in fact.  *Id.*  The State Police also concluded that "[r]elative to her other options of either remaining inside the vehicle, or attempting to cross the right travel lane in order to access the protected roadside, remaining standing within the roadway would generally be considered as the least safe option."  *Id.* ¶ 35.  Plaintiff argues this determination was "[c]onjecture."  *Id.*

Plaintiff has also included a number of additional facts she claims are material.  Pl.'s L.R. 56(a)2 St. Add. Mat. Facts, ECF No. 183 at 9–17.  Many of these are legal conclusions the Court need not summarize here.  *See, e.g.*, *id.* ¶ 6 ("Proctor & Gamble was negligent in selecting Convoy to carry its load.").  Plaintiff contends that Estrada had a driving history that revealed him to be an

---

[4] Plaintiff's Local Rule 56(a)2 statement with respect to P&G's motion clearly admits "[t]he disabled motor vehicle pushed into Figueroa who had been driving the vehicle."  ECF No 155-2 ¶ 33.  Inexplicably, Plaintiff's Local Rule 56(a)2 statement with respect to Convoy responds that this exact same statement of fact is "[u]nknown."  ECF No. 183 ¶ 31.

incompetent motor carrier "who was placed out of service before the crash," and that he failed to reduce his speed in hazardous conditions on the night of the crash. *Id.* ¶¶ 1, 5. Plaintiff further contends that Convoy knew Estrada was the driver of the load involved in the accident. *See id.* ¶ 14. Plaintiff also posits that Convoy had little or no experience in the trucking industry, but acknowledges that Prowheeler had "hauled many loads for Convoy before the crash." *Id.* ¶¶ 13, 15.

Plaintiff, as the administratrix of Ms. Figueroa's estate, filed this action in state court, alleging various types of negligence claims against Defendants. Defendants removed this action to federal court. Not. of Removal, ECF No. 1. Convoy and P&G now move for summary judgment on all counts brought against them.[5]

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might "affect the outcome of the [law]suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in

---

[5] On February 14, 2025, in response to Defendants' request for a continuance of various dates in the Court's scheduling order, the Court extended the discovery timeline and set the deadline for motions for summary judgment as July 31, 2025. *See* Order, ECF No. 138. P&G and Convoy nonetheless filed their present motions on February 27, 2025, before discovery closed. *See* Mots., ECF Nos. 139, 140. Discovery has since been extended through September 15, 2025. *See* Order, ECF No. 225.

dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## CONVOY'S MOTION FOR SUMMARY JUDGMENT

For the reasons discussed below, the Court grants summary judgment in favor of Convoy as to the vicarious liability counts against it, but denies Convoy's motion as to Plaintiff's direct negligence counts.

## I.     PREEMPTION AS TO CONVOY

The Court begins by rejecting Convoy's arguments that Plaintiff's state law claims against it are preempted by the Federal Aviation Administration Authorization Act ("FAAAA") and the Graves Amendment.

### A.     Preemption Generally

Under the Supremacy Clause, the Constitution and federal statutes "shall be the supreme Law of the Land . . . [the] Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The doctrine of preemption is a "corollary of the Supremacy Clause," which allows Congress to "set aside the laws of a State." *Buono v. Tyco Fire Products, LP*, 78 F.4th 490, 495 (2d Cir. 2023) (citation omitted). "When federal law preempts nonfederal law, the Supremacy Clause requires courts to follow federal, not state, law." *Id.* (internal quotation marks and citation omitted). Although the Second Circuit has recognized three forms of preemption, only "express preemption," where Congress has expressly preempted state law, is relevant here. *Figueroa v. Foster*, 864 F.3d 222, 227–28 (2d Cir. 2017).

When faced with an express preemption clause in a federal statute, a court must "focus[ ] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Buono*, 78 F.4th at 495 (citing *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011)). Even if "a federal law contains an express pre-emption clause," the "question

of the substance and scope of Congress' displacement of state law still remains." *Buono*, 78 F.4th at 495–96 (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)).

    B.  <u>FAAAA Preemption</u>

    The FAAAA was enacted as part of an effort by Congress to deregulate the trucking industry. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 255–56 (2013). Congress had found "that state governance of intrastate transportation of property had become unreasonably burden[some] to free trade, interstate commerce, and American consumers." *Id.* at 256

    The relevant FAAAA preemption provision provides: "Except as provided in paragraphs (2) and (3), a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). As relevant here, a "safety exception" set forth in 49 U.S.C. § 14501(c)(2) forbids preemption in certain instances, by providing that the FAAAA "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." *Id.* § 14501(c)(2)(A).

    For the reasons described below, the Court concludes that the requirements of the FAAAA's preemption clause in 49 U.S.C. § 14501(c)(1) are met, but that the safety exception also applies. Thus, Plaintiff's state law claims against Convoy are not preempted.

    First, the Court concludes that Plaintiff's state law negligence claims are "related to a price, route, or service" of a covered entity "with respect to the transportation of property," such that they would ordinarily be preempted. To start, it is clear that the phrase "other provision having the force and effect of law" in the FAAAA preemption clause includes common law claims. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014) (interpreting identical language in the preemption provision of the Americans with Disabilities Act). Thus, Plaintiff's common law

negligence claims would fall within the preemption provision of § 14501(c)(1) if they are "related to a price, route, or service" of a covered entity "with respect to the transportation of property."  In the preemption context, the phrase "related to" is meant to "express a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (interpreting phrase "relating to"); *see also Cox v. Total Quality Logistics, Inc*., No. 24-3599, __ F.4th __, 2025 WL 1878770, at *4 (6th Cir. July 8, 2025).  That is, state law claims "having a connection with, or reference to carrier rates, routes, or services are pre-empted."  *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008) (cleaned up) (quoting *Morales*, 504 U.S. at 384).  Preemption occurs even if a state law has only "an indirect" effect on rates, routes, or services, as long as the connection is not "tenuous, remote, or peripheral."  *Rowe*, 552 U.S. at 370–71 (quoting *Morales*, 504 U.S. at 386, 390).

Although the Second Circuit has not addressed this precise question, four circuit courts of appeal have squarely concluded that common law negligence claims are "related to a price, route, or service" of brokers.  For instance, the Seventh Circuit concluded that the imposition of state negligence liability on brokers for negligent hiring of carriers "would have significant economic effect on broker services," and thus relate to the "price, route, or service" of a broker.  *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 457–60 (7th Cir. 2023).  Similarly, the Eleventh Circuit concluded that negligence claims sounding in negligent hiring, negligent selection, and negligent entrustment against a broker related to the "core" function of a broker—selecting the motor carrier who will do the transporting—and therefore have a sufficient connection with services of brokers. *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1266–68 (11th Cir. 2023).  The Ninth Circuit likewise concluded that negligent hiring claims against a broker were preempted in part because such a claim "seeks to interfere at the point at which [a broker] arranges for transportation

by motor carrier," and, therefore, "is directly connected" with broker services as defined in the statute. *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1024 (9th Cir. 2020). And finally, the Sixth Circuit recently agreed in *Cox*, concluding that a negligent hiring claim brought against a broker was one "with respect to" or that "concerns" transportation. *Cox*, 2025 WL 1878770, at *4–5. The Court agrees with the reasoning of these courts of appeal. And Plaintiff here appears to have conceded, by her silence on the issue, that this case involves the "transportation of property," as required for preemption, given that it is undisputed Estrada was transporting property for P&G at the time of the collision.

Even if the Court were to construe Convoy to be a motor carrier, as Plaintiff contends, preemption still applies, as § 14501(c)(1) explicitly includes motor carriers.[6] Indeed, the Supreme Court has noted that the FAAAA's preemption provision is "applicable to motor carriers." *Dan's City Used Cars, Inc.*, 569 U.S. at 254. Courts have also analyzed FAAAA preemption in the motor carrier context. *See, e.g.*, *Interboro Packaging Corp. v. New Penn Motor Express*, LLC, No. 21-CV-10591 (PMH), 2023 WL 1993887, at *3 (S.D.N.Y. Feb. 14, 2023) ("The preemption provision applies to 'motor carriers of property,' as well as 'motor private carrier[s], broker[s], or freight forwarder[s] with respect to the transportation of property.'"); *Siaci Saint Honore v. M/V Maersk Kowloon*, No. 21-CV-03909 (EP) (JSA), 2022 WL 16949126, at *1, 4 (D.N.J. Nov. 15, 2022)

---

[6] In Plaintiff's opposition to Defendants' summary judgment motions, Plaintiff implied that its belief that Convoy operated as a motor carrier, in addition to a broker, for the transaction at issue meant that FAAAA preemption would not apply. *See* Pl.'s Opp. Br. to Convoy's Mot. for Summ. J., ECF No. 154-1 at 3 ("[I]f the Court finds as a matter of law that Convoy was the carrier of the load that Uriel Estrada was hauling on the night that Samantha was killed, there is no need to address the preemption issues that are tautologically argued in P&G and Convoy's memoranda."); *id.* at 29–30 ("[I]f the Court chooses to consider that Convoy was the broker for the load and address Convoy's preemption arguments, the Plaintiff offers the following in support of non-applicability of FAAAA preemption to the case at bar."). The Court identified that this argument contradicts the language of the FAAAA's preemption provision, which applies both to "motor carriers" and "brokers." *See* 49 U.S.C. § 14501(c)(1). The Court therefore requested supplemental briefing on this issue, in advance of the oral argument. *See* Order, ECF No. 210. In its supplemental briefing, Plaintiff concedes that the FAAAA's preemption provision applies equally to motor carriers and brokers. *See* Pl.'s Supp. Br., ECF No. 213 at 1–2. The Court thus explicitly does not decide, at this juncture, whether Convoy is a motor carrier with respect to the transaction at issue.

(applying FAAAA preemption in the motion to dismiss context where defendant West End was a motor carrier).

Plaintiff's reliance on *Covenant Imaging, LLC v. Viking Rigging & Logistics, Inc.*, No. 3:20-CV-00593 (KAD), 2021 WL 973385, at *5–6 (D. Conn. Mar. 16, 2021) is unavailing.  There, the court found the FAAAA preempted negligence claims against a Defendant that had sub-brokered transportation of medical equipment.  In so concluding, the court relied on a presumption against federal preemption of traditional state police powers, based on language from the U.S. Supreme Court.  *Id.* at *6 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  The Supreme Court has since eschewed such a presumption and focused on the text of the statute.  *See, e.g.*, *Whiting*, 563 U.S. at 594 ("When a federal law contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.").

Thus, the Court holds that the elements of the FAAAA's preemption provision are met here.

### C.  FAAAA Safety Exception

Plaintiff's negligence claims against Convoy are, however, saved from preemption by the so-called "safety exception" found in 49 U.S.C. § 14501(c)(2)(A).

As noted above, the FAAAA explicitly provides that its preemption provision, in relevant part, "shall not restrict *the safety regulatory authority of a State with respect to motor vehicles*." 49 U.S.C. § 14501(c)(2)(A) (emphasis added).  The clause's application here depends on the meaning of the phrases "the safety regulatory authority of a State" and "with respect to motor vehicles."

First, in line with all three circuit courts that have squarely addressed the issue, Court holds that "the safety regulatory authority of a State" encompasses state common law negligence claims. *See Aspen Am. Ins. Co.*, 65 F.4th at 1270; *Miller*, 976 F.3d at 1026–29; *Cox*, 2025 WL 1878770, at *6–9.[7]  The safety exception's "clear purpose" is to ensure that the preemption provision does not encroach upon "the preexisting and traditional state police power over safety."  *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 426 (2002).  To this end, a law is within "the safety regulatory authority of a State" if the law is "genuinely responsive to safety concerns."  *Id.*  The Court concludes that state negligence liability, which in large part is concerned with accidents and deterring negligent behavior, qualifies.

The Court thus turns to whether Plaintiff's negligence claims are "with respect to motor vehicles," and concludes that they are.  At this point in the preemption analysis, the circuit courts that have addressed the issue diverge.  The Seventh and Eleventh Circuits hold that the safety exception does not apply to negligence claims against brokers in large part because they read that there needs to be a "direct connection" between the role of the broker in the transaction and motor vehicles in order for the safety exception to apply.  *Ye*, 74 F.4th at 460–66; *Aspen Am. Ins. Co.*, 65 F.4th at 1270–72.  In both cases, the courts concluded that, because the brokers merely facilitated the shipments, they were one step removed from the motor vehicles that actually caused the accidents at issue; thus, the plaintiffs' negligence claims against the brokers did not fall with the safety regulatory authority of a state "with respect to motor vehicles."  *Ye*, 74 F.4th at 460–66; *Aspen Am. Ins. Co.*, 65 F.4th at 1270–72 (citing *Miller,* 976 F.3d at 1031 (Fernandez, J., concurring in part and dissenting in part)).

---

[7] The Seventh Circuit declined to decide whether Illinois tort law was part of its "safety regulatory authority," because it decided that such laws, enforced against a broker, were not laws "with respect to motor vehicles."  *Ye*, 74 F.4th at 460.

The Ninth Circuit, on the other hand, held that the phrase "with respect to," simply means "relating to," and that negligence claims against brokers relate to motor vehicles because they promote safety on the road. *Miller*, 976 F.3d at 1030–31. And most recently, the Sixth Circuit noted that there was "good reason to doubt that the safety exception requires a *direct* connection to motor vehicles," as framed by the Seventh and Eleventh Circuits, in part because "with respect to" has a broad meaning of "concern" and "relating to." *See Cox*, 2025 WL 1878770, at *8. Without deciding whether the FAAAA requires such a direct connection, the Sixth Circuit concluded that the plaintiff's negligence claims against the broker did, in any event, have a direct connection to motor vehicles. *Id.*

The Court finds the Sixth Circuit's approach most persuasive. To begin, the Court questions, without deciding, whether the safety exception requires a "direct connection" between state law and the operation of motor vehicles. First, the Supreme Court has broadly interpreted the phrase "with respect to" elsewhere in the FAAA to mean, simply, "concern[s]." *See Dan's City Used Cars*, 569 U.S. at 261 (interpreting "with respect to the transportation of property" found in § 14501(c)(1)); *see also Cox*, 2025 WL 1878770, at *6; *Morales, Inc.*, 504 U.S. at 383 (concluding that the "ordinary meaning" of the words "relating to" in a similar preemption provision in the Airline Deregulation Act "is a broad one"). This broad formulation of the phrase "with respect to" in § 14501(c)(1) appears inconsistent with reading in the requirement of a "direct connection" in the closely analogous language in the safety exception found in § 14501(c)(2). *See Cox*, 2025 WL 1878770, at *8. Moreover, the safety exception itself does not include the word "direct," making it less likely the text itself requires such a connection. *Id.*

And even if a "direct connection" is required, the Sixth Circuit correctly identifies that the Seventh and Eleventh Circuits seem to define "direct connection" improperly, by focusing on the

role of the broker in a trucking transaction, as opposed to whether the state claim at issue concerns motor vehicles. *Id.* at *8. When reframed appropriately, it becomes clear that preemption of Plaintiff's negligence and vicarious liability claims against Convoy is inappropriate, because both are claims "with respect to motor vehicles." Here, as in *Cox*, the basis of the negligence claim is that Convoy negligently selected "an unsafe motor carrier to transport goods by motor vehicle, resulting in a fatal vehicular accident." *Id.* Also, just as in *Cox*, Plaintiff here seeks to hold Convoy directly liable for "ignoring" Prowheeler's and Estrada's "record[s] of unsafe motor vehicle operation and placing a motor vehicle, driven by an unsafe driver, on the highway." *Id.*; *see also id.* at *6 (concluding that "there is no way to disentangle motor vehicles" from negligent hiring claim against a broker). Likewise, Plaintiff's claims for vicarious liability against Convoy hinge on Estrada's operation of the tractor trailer, a motor vehicle. Thus, for the reasons the Sixth Circuit explained, Plaintiff's state law claims here have a "direct link" with motor vehicles. *Id.* at *8. Exempting these types of claims against a broker from preemption also comports with "the basic reality that brokers are ultimately responsible for placing such motor vehicles on the road, even if those motor vehicles are driven and owned by a different entity." *Id.*

Accordingly, the Court holds that the safety exception to preemption applies, and Plaintiff's claims against Convoy are not preempted by the FAAAA.[8]

D.  Graves Amendment Preemption

The Court also concludes that the Graves Amendment does not preempt Plaintiff's state law claims against Convoy.

---

[8] The Court notes that it need not consider Plaintiff's arguments that Convoy is both broker and motor carrier to reach this conclusion. Indeed, Convoy argues that it is a broker, *not* a motor carrier, so analyzing the preemption law primarily through the lens of negligence claims against brokers—as the Court and other circuits have—aligns with Convoy's theory of the case.

The Graves Amendment was "enacted to protect the vehicle rental and leasing industry against claims for vicarious liability where the leasing or rental company's only relation to the claim was that it was the technical owner." *Rein v. CAB E. LLC*, No. 08-CV-2899 (PAC), 2009 WL 1748905, at *2 (S.D.N.Y. June 22, 2009) (citing 151 Cong. Rec. H 1034, 1200 (2005) (statement of Rep. Graves)).  The Amendment provides, in relevant part:

> (a) In general.—An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a).  The Amendment thus preempts state law vicarious liability claims against owners of motor vehicles under certain circumstances, if the owner is not itself negligent or criminally liable.  *See Green v. Toyota Motor CreditCorp*, 605 F. Supp. 2d 430, 434 (E.D.N.Y. 2009) (recognizing that the Graves Amendment "clearly intended" to preempt claims against vehicle rental and leasing companies "based on vicarious liability").

To be sure, an entity that leases a vehicle is covered under the scope of the Amendment as an "owner." *See Rein*, 2009 WL 1748905, at *3.  The parties do not dispute that the trailer attached to the tractor driven by Estrada was leased from Premier to Convoy and then subleased from Convoy to Prowheeler/Estrada.  ECF No. 183 ¶¶ 7, 9; *see also* Shutze Dep. Tr., ECF No. 140-1 at 243.  There is, further, no dispute that Convoy was "engaged in the trade or business of renting or leasing motor vehicles." *See* 49 U.S.C. § 30106(a)(1).

The Court thus turns to the subsection (a)(2) of the Amendment, which requires an analysis of whether there was some direct wrong committed by the owner of the vehicle. Its considerations get to the core of the Amendment's purpose—if a covered owner has done nothing negligent or criminal, it cannot be liable simply for the actions of a renter or lessee. But if a covered owner is itself responsible for some negligent or criminal conduct, then claims under state law may proceed against it. Because there are no allegations of criminal wrongdoing by Convoy, whether the Graves Amendment preempts Plaintiff's claims hinges on whether there was any direct negligence on Convoy's part.

Convoy has not carried its burden in establishing that there are no questions of material fact as to whether it was directly negligent within the meaning of the Graves Amendment. Plaintiff's direct negligence claim against Convoy advances several subspecies of negligence: "Broker Convoy, Inc. was independently negligent in hiring, qualifying, training, entrusting, supervising, and retaining" Prowheeler and Estrada. ECF No. 1-1 at 27. At the very least, there are questions of material fact as to whether Convoy negligently entrusted Prowheeler and Estrada with the trailer, and negligently hired or selected Prowheeler and Estrada to carry the load.[9]

Although Convoy points the Court to evidence to suggest it had systems in place to monitor and prevent incompetent carriers from taking loads, Plaintiff has also supplied evidence from which a reasonable jury could conclude that Convoy acted negligently in hiring/selecting Prowheeler and Estrada and entrusting them to transport this load. For its part, Convoy has

---

[9] Under Connecticut law, in order to establish a negligent entrustment claim, a plaintiff must demonstrate that: "(1) the defendant entrusted a potentially dangerous instrumentality to a third person (2) whom the entrustor knows or should know intends or is likely to use the instrumentality in a manner that involves unreasonable risk of physical harm, and (3) such use does in fact cause harm to the entrustee or others." *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 81 (2019). Further, as explained below, under a negligent selection theory, "a principal can be held liable for the torts of an independent contractor when the consequences of the principal's own negligent failure to select a competent contractor caused the harm upon which the suit is based." *Davies v. General Tours, Inc.*, 63 Conn. App. 17, 35 n.10 (2001) (internal quotation marks omitted), *overruled on other grounds by Cefaratti v. Aranow*, 321 Conn. 593 (2016).

introduced evidence that it used internally-created Behavioral Analysis and Safety Improvement Category ("BASIC") scores and safety algorithms to determine a motor carrier's safety risk, and that these means were intended to block an unqualified motor carrier from booking loads on Convoy's platform.  Shutze Dep. Tr., ECF No. 140-1 at 158–59.  Convoy has also introduced evidence that it was supposed to receive notification from various services it utilized if a prospective driver's Commercial Driver's License ("CDL") was suspended; if so, Convoy would then "put the driver in a suspended state."  *Id.* at 185.  Convoy also used an entity called SaferWatch to "monitor motor carriers."  *Id.* at 269–70.  Further, Convoy references the State Police report, which provides several indicators that Prowheeler was a carrier in good standing. Convoy argues, for instance, that Prowheeler had been compliant with its biannual Motor Carrier Identification Report (MCS-150) update,[10] had a motor carrier number and valid operating authority to haul third-party freight, and was listed as an active carrier with no federal out-of-service order directives.  Convoy's Br., ECF No. 140-1 at 29 (citing ECF No. 140-1 at 408).

But, drawing all reasonable inferences in Plaintiff's favor—as the Court must at this stage—there are still questions of material fact as to whether Convoy negligently hired or selected Prowheeler and whether it negligently entrusted Prowheeler with the trailer.  For instance, Plaintiff points to evidence of Estrada's checkered driving record and the fact that Estrada was Prowheeler's only driver, creating questions of material fact as to whether Convoy knew or should have known that entrusting Prowheeler with trucking equipment would create an unreasonable risk of Estrada causing physical harm to others.  Specifically, Plaintiff's expert report demonstrates that Estrada's driving record reflected a collision with a train in 2018 and an offense of driving under the influence of a drug in May 2021; that in August of 2021, two months before the accident that killed

---

[10] *See* Form MCS-150 and Instructions, https://www.fmcsa.dot.gov/registration/form-mcs-150-and-instructions-motor-carrier-identification-report (last visited July 23, 2025).

Figueroa, Estrada was placed out of service in Illinois for driving a commercial motor vehicle while his CDL was "suspended, cancelled, disqualified, or revoked" for safety; and that when the Connecticut State Police ran Estrada's license number after the accident, records reflected that it was suspended. Lew Grill Expert Rep., ECF No. 173 at 24–25. Relatedly, deposition testimony from Convoy's Rule 30(b)(6) witness, Michael Shutze, demonstrates that Convoy would have known, or at least could have known, that Estrada was the only driver for Prowheeler. *See* Shutze Dep. Tr., ECF No. 165 at 102–03. The same witness testified that, for a period of time between 2020 and 2021, Prowheeler was suspended from booking loads on Convoy's platform for a lapse in insurance coverage. Shutze Dep. Tr., ECF No. 140-1 at 200. Moreover, Plaintiff's expert Billy Weaver testified (a) that Convoy knew or should have known of Estrada's 2018 accident and DUI offense at the time Prowheeler became the motor carrier for the shipment in this case and (b) failed to follow established protocols in the industry for selecting a safe and competent motor carrier. *See* Weaver Dep. Tr., ECF No. 172 at 68–74; *see also id.* at 80.

In light of these portions of the record, Convoy has failed to show that there are no questions of material fact as to its breach of a duty[11] to select and entrust a competent motor carrier. For purposes of Graves Amendment preemption, then, Convoy has failed to show that it was not negligent within the meaning of 49 U.S.C. § 30106(a)(2), as a matter of law. Thus, the Graves Amendment does not preempt Plaintiff's state law claims against Convoy.

## II.    VICARIOUS LIABILITY AS TO CONVOY (COUNTS ONE AND THIRTEEN)

Having concluded that no federal law preempts Plaintiff's state law claims against Convoy, the Court must now address Plaintiff's four state law claims against Convoy. Starting with the

---

[11] Convoy does not argue that it did not have a duty to non-negligently select and entrust a motor carrier.

two vicarious liability claims, for the reasons discussed below, the Court grants Convoy's motion for summary judgment as to Counts One and Thirteen.

In Count One, Plaintiff alleges Convoy is vicariously liable under common law for the allegedly negligent actions of Prowheeler and Estrada. *See* ECF No. 1-1 at 24. In Count Thirteen, Plaintiff likewise alleges that Convoy is vicariously liable for the allegedly negligent actions of Prowheeler and Estrada, but under Conn. Gen. Stat. § 52-183 and 49 C.F.R. §§ 383.5 and 390.5, which are both definitional regulations. *See id.* at 55. At oral argument, Plaintiff's counsel conceded that Counts One and Thirteen are effectively duplicative. The Court analyzes both counts together below.

As a preliminary matter, the Court finds that Plaintiff has waived any objection to Defendant's motion for summary judgment as to the vicarious liability claims in Counts One and Thirteen. Defendant explicitly moved for summary judgment as to Counts One and Thirteen, ECF No. 140 at 1, and also explicitly offered multiple arguments in support in its memorandum of law as to these counts, ECF No. 140-1 at 22–27. In her objection, Plaintiff simply failed to respond to these arguments or explicitly offer any reason why Defendant's motion should not be granted as to these counts. Under the local rules, a party is "deemed to have waived any argument in support of an objection that such party does not include in its memorandum of law." D. Conn. L. Civ. R. 56(a)2. Moreover, "where one party fails to respond to an opposing party's argument that its claim must be dismissed, courts may exercise their discretion and deem the claim abandoned." *Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 459 (S.D.N.Y. 2010).

The Court would thus be well within its discretion to grant Convoy's motion for summary judgment as to Counts One and Thirteen based on Plaintiff's lack of response alone. But even if

Plaintiff had opposed the motion, Convoy's motion as to the vicarious liability counts still prevails on the merits.

A. Applicability of Conn. Gen. Stat. § 52-183

First, because Count Thirteen purports to bring a claim under Conn. Gen. Stat. § 52-183, the Court analyzes whether there are any issues of material fact as to liability under that provision. There are not.

The statute provides:

> In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of the motor vehicle, the operator, if he is other than the owner of the motor vehicle, shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment. The defendant shall have the burden of rebutting the presumption.

Conn. Gen. Stat. § 52-183.

Convoy argues that it is not the "owner of a motor vehicle" within the meaning of this statute, as it did not own the tractor or the trailer Estrada was operating. Convoy's Br., ECF No. 140-1 at 22–23. Plaintiff offers no rebuttal to this point.[12] In fact, in response to P&G's motion for summary judgment, Plaintiff concedes that § 52-183 "does not apply based on the evidence developed to date," and argues for vicarious liability as to P&G only under Connecticut common law. *See* Pl.'s Opp. Br. re: P&G, ECF No. 155-1 at 27. It is undisputed that Convoy was not the owner of the tractor or the trailer, rendering § 52-183 inapposite. And, in addition, Plaintiff makes no argument that a trailer is a "motor vehicle" within the meaning of § 52-183. Thus, Convoy is entitled to summary judgment as to Count Thirteen, insofar as it is brought under § 52-183.

---

[12] On the very first page of its objection, Plaintiff clearly evinces an understanding that Convoy argues that § 52-183 does not apply. Pl.'s Obj. re: Convoy, ECF No. 154 at 1 ("Convoy, seeks to have judgment enter in its favor on counts one . . . and thirteen of Plaintiff's Complaint, claiming that: . . . (b.) Connecticut General Statutes § 52-183 does not apply to Convoy."). Yet, Plaintiff offers no response.

B. <u>Plaintiff's Purported Federal Statutory Employer Argument</u>

Next, the Court holds that Convoy is also entitled to summary judgment insofar as Count Thirteen is brought under 49 U.S.C. §§ 383.5 and 390.5, which contain definitions of various terms. Although Plaintiff does not specify which definitions from these provisions apply, the Court assumes she refers to these provisions' definitions of "employer" and "employee."

As noted above, upon reviewing Plaintiff's opposition to Convoy's motion for summary judgment, the Court noted that Plaintiff made extensive arguments that Convoy was not only a broker, but also a motor carrier with respect to the load at issue in this case. Plaintiff, without providing citation, argued that if the Court were to conclude that Convoy was the motor carrier, the Court would not need to address Convoy's preemption arguments. In order to better understand the import of Plaintiff's line of argument, the Court ordered supplemental briefing from the parties to understand their positions on whether the broker-carrier distinction changed the preemption analysis or any of the analysis as to Plaintiff's substantive claims. *See* Order, ECF No. 210. In the final pages of Plaintiff's supplemental brief filed in response to the Court's order, she raised a new argument that Convoy was the "statutory employer" of Prowheeler and Estrada within the meaning of the Federal Motor Carrier Safety Regulations ("FMCSR"). Pl.'s Supp. Br., ECF No. 213 at 5–8. As explained further below, a "statutory employer" can be vicariously liable for the torts of its "employees."

As a preliminary matter, the Court cannot accept Plaintiff's statutory employer arguments because they were not fairly raised in the original briefing on the present motions. At oral argument, Plaintiff's counsel conceded that the statutory employer argument did not appear in its objections to Convoy's and P&G's motions for summary judgment. Plaintiff's counsel posited that it mentioned the statutory employer concept only in its statement of additional material facts.

*See* Pl.'s L.R. 56(a)2 St. Add. Mat. Facts as to Convoy, ECF No. 183 ¶ 17.  While it is true this paragraph states that "Convoy was Prowheeler's statutory employee because it leased a commercial motor vehicle to Prowheeler," that argument appears nowhere in Plaintiff's extensive briefing (nor does Plaintiff define "statutory employer" in her statement of additional material facts).  Although the Court later allowed further supplemental briefing on the statutory employer issue, *see* Order, ECF No. 217, it concludes that it would be unfair for Plaintiff to be allowed to rely on a theory of legal liability not explicitly mentioned anywhere in its original opposition briefing.  *See* D. Conn. L. Civ. R. 56(a)2 ("A party shall be deemed to have waived any argument in support of an objection that such party does not include in its memorandum of law."); *see also Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (finding that an argument not raised by a plaintiff his opposition to the defendant's summary judgment motion was waived); *Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014) (summary order) (same); *Kaye v. N.Y. City Health & Hosps. Corp.*, No. 18 Civ. 12137 (JPC) (JLC), 2023 WL 2745556, at *17 n.22 (S.D.N.Y. Mar. 31, 2023) (deeming waived an argument not raised in a summary judgment opposition brief).  Convoy was not on sufficient notice to address the statutory employer line of argument in its reply brief, on account of Plaintiff's failure to raise the issue in her briefing.  While this is an independent basis for rejecting this line of argument, the Court also rejects it on the merits.

To explain why the statutory employer argument fails on its merits, the Court begins with the statutory and regulatory framework.  In 1956, Congress amended federal law "to require interstate motor carriers to assume full direction and control of leased vehicles," so that "interstate motor carriers would be fully responsible for the maintenance and operation of leased equipment and the supervision of drivers, thus protecting the public and providing financial responsibility for motor carrier accidents."  *Crocker v. Morales-Santana*, 854 N.W.2d 663, 668 (N.D. 2014).  The

resulting regulations "create a statutory employee relationship between owner-lessors and authorized motor carrier-lessees," enabling the owner-lessors to be held vicariously liable for the negligent acts of the motor-carrier lessees. *Id.* at 669. To effectuate this policy, the FMCSR require certain motor carriers who lease equipment to enter into written lease agreements that provide assumption of liability. Specifically, these regulations require "an authorized interstate motor carrier who leases equipment to enter a written lease with the equipment owner stating the carrier-lessee shall have exclusive possession, control, and use of the equipment and shall assume complete responsibility for the operation of the equipment during the term of the lease." *Waldhart v. 7S Trucking, Inc.*, No. 4:15-CV-101, 2016 WL 11476943, at *3 (D.N.D. Dec. 9, 2016); *see also* 49 C.F.R. §§ 376.11–12.

Importantly, however, these leasing regulations do not apply to "any type of trailer not drawn by a power unit leased from the same lessor." *Waldhart*, 2016 WL 11476943, at *3 (quoting 49 C.F.R. § 376.21(d)); *see also Crocker*, 854 N.W.2d at 668. In other words, if a motor carrier does not lease both a tractor *and* a trailer from the same lessor, the motor carrier is not the statutory employee of the lessor, and the lessor is not subject to vicarious liability for the acts of the motor carrier.

Here, the exception in § 376.21(d) applies, precluding any form of "statutory liability" as might otherwise be required by §§ 376.11–12. The parties agree that Premier leased the trailer to Convoy, which sub-leased the trailer to Prowheeler. *See* Shutze Dep. Tr., ECF No. 140-1 at 243 (testimony regarding the leasing of the trailer at issue). But the record does not indicate, and neither party argues, that Convoy also leased the *tractor* to Prowheeler or Estrada. *See* Police Report, ECF No. 140-1 at 363 (police report identifying Prowheeler LLC as owner of the "vehicle" involved in the collision); Police Report, ECF No. 140-1 at 409 (police report narrative identifying

"TF Leasing" as owner of truck tractor); *see also* ECF No. 1-1, ¶ 51 (alleging that Prowheeler owned the tractor). Thus, absent any indication that Convoy leased both the tractor *and* the trailer to Prowheeler, the exception from § 376.21(d) applies and the statutory employer concept as imposed by §§ 376.11–12 is inapplicable. *See Waldhart*, 2016 WL 11476943, at *3 (concluding that the FMCSR leasing regulations imposing statutory liability did not apply to defendant-lessor because, although it had leased a trailer to the motor carrier involved in an accident, the motor carrier-lessee owned its own tractor).[13]

The Court also rejects any contention that 49 C.F.R. §§ 385.5 or 390.5 provide for statutory vicarious liability here. These sections are both definitions sections in the FMCSR. And while they do define "employer" and "employee," Plaintiff has failed to identify how such a classification would be relevant for the claims she is bringing, even assuming (without deciding) that Convoy qualifies as an "employer" under these regulations. Plaintiff does not allege that she is substantively bringing a claim under the FMCSR in the complaint, nor does she argue as much in summary judgment briefing. Therefore, it is Connecticut's common law for vicarious liability, not the definitions in the FMCSR, that governs the vicarious liability analysis. Indeed, district courts have noted as much in similar situations. *See McKeown v. Rahim*, 446 F. Supp. 3d 69, 78 (W.D. Va. 2020) ("Virginia's common law, and not the definitions of § 390.5, control the court's vicarious-liability analysis."); *White v. Date Trucking, LLC*, No. CV ELH-17-1177, 2018 WL 2462921, at *4–6 (D. Md. June 1, 2018) (noting that an alleged employee of defendant's employee status under the FMCSR had "no bearing," on whether Defendant was vicariously liable for alleged employee's negligence, as such inquiry was controlled by state tort law); *see also Lohr v. Zehner*,

---

[13] Plaintiff argues that § 376.21(d) does not apply here because that subsection is limited to "matters of employer/employee relationship in the context of taxes/worker's compensation." ECF No. 221 at 3. But Plaintiff provides no authority to support this proposition.

24

No. 2:12-CV-533-MHT, 2014 WL 2504574, at *3 (M.D. Ala. June 3, 2014) (concluding that the FMCSR "does not impose any liability scheme directly" and that it "is reasonable to interpret the regulation as leaving that question to various States' common-law courts"). And while one case— cited, ironically, by Convoy—indicates that courts within the Fifth Circuit have come to the opposite conclusion, *see Morales v. OK Trans, Inc.*, No. 2:19-CV-00094, 2024 WL 1348405, at *6 (S.D. Tex. Mar. 29, 2024), its rationale rests on Fifth Circuit precedent, and is not binding on this Court.

For these reasons, Convoy is entitled to summary judgment as to Count Thirteen in full.

C. <u>Connecticut Common Law</u>

What remains, then, is solely Count One, alleging common law vicarious liability against Convoy for the acts of Prowheeler and Estrada. The Court concludes that there is no question of material fact concerning whether Convoy is vicariously liable for the alleged negligence of Prowheeler or Estrada under Connecticut common law. It is not.

Vicarious liability is "based on a relationship between the parties." *Alvarez v. New Haven Reg., Inc.*, 249 Conn. 709, 720 (1999). Employers may be vicariously liable for the negligent conduct of their employees acting within the scope of their employment. *Gonzalez v. O & G Indus., Inc.*, 341 Conn. 644, 682 (2021). A corollary to this rule is that, generally, "an employer is not [vicariously] liable for the negligence of its independent contractors," *id.*, because the employer has "no power of control over the manner in which the work is to be done by the [independent] contractor." *Pelletier v. Sordoni/Skanska Const. Co.*, 264 Conn. 509, 517–18 (2003). "The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work. . . . It is not the fact of actual interference with the control, but the right to interfere, that makes the

difference between an independent contractor and a servant or agent." *Young v. City of Bridgeport*, 135 Conn. App. 699, 708 (2012). Even in the case of independent contractors, however, if a defendant "reserve[s] in [the] contract general control over the contractor or his servants, or over the manner of doing the work," or "assume[s] control or interfere[s] with the work," the defendant may be vicariously liable. *Gonzalez*, 341 Conn. at 683. This is known as the "control" exception. *Id*. "The word 'control' has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee." *Mozeleski v. Thomas*, 76 Conn. App. 287, 294 (2003).

Convoy's Terms of Service Agreement with Prowheeler, although not definitive, strongly support the conclusion that Prowheeler acted as an independent contractor, rather than as an employee, of Convoy. *See* Convoy Terms of Service Agr., ECF No. 140-1 at 47 ("As a Carrier who accesses or uses the Service, **you are an independent contractor** and remain solely responsible for screening, selecting, hiring, training, supervising, managing, assigning, and dispatching any drivers; as well as for the inspection and maintenance of your motor vehicle equipment and accessories. You are solely responsible for your own actions, omissions, training, oversight, compliance with regulatory and safety requirements, and all management of your equipment, services, drivers, employees, contractors, agents and servants.") (emphasis added); *id.* ("Convoy is not an agent of you or any Carrier, and no Carrier is an agent of Convoy."). Moreover, the Terms of Service indicated that the carrier maintains "sole control over the methods and results by which you perform cargo transportation services, and retain the sole duty to provide, maintain, manage and control the equipment, personnel, and expertise required to transport Shippers' cargo." *Id.* Through this language, Convoy broadly disclaimed any right to control the operations of Prowheeler's business.

Plaintiff fails to identify—and the Court has not independently located—any portions of the record that indicate Convoy exercised any meaningful control over Prowheeler or Estrada in practice, as a deviation from these contractual terms.  Convoy argues that it simply operated an application to "connect Shippers with Carriers," that allowed Shippers to "submit a request for the transportation of cargo," and through which carriers "*can* accept such requests."  *Id.* (emphasis added).  Plaintiff offers no substantive rebuttal to Convoy's characterization of its relationship with Prowheeler.  Thus, the Court is unable to conclude that there are any genuine disputes of material fact concerning whether the control exception applies.  The evidence in the record demonstrates that Convoy and Prowheeler had an independent contractor relationship in which Convoy did not exercise sufficient control over Prowheeler to provide a deviation from the general rule that defendants are not liable for the negligence of their independent contractors.

The Court therefore grants Convoy's motion for summary judgment as to Counts One and Thirteen.

## III.    NEGLIGENCE AS TO CONVOY (COUNTS TWO AND THREE)

Plaintiff also alleges in Count Two that Convoy was directly negligent, and, in Count Three, that Convoy was directly negligent *per se*.  *See* ECF No. 1-1 at 26–34.  Convoy conceded at oral argument that it does not substantively move for summary judgment as to Counts Two and Three.  Indeed, Convoy's sole summary judgment arguments as to these counts rest entirely on federal preemption of Plaintiff's negligence claims.  Because the Court has found above that neither the FAAAA nor the Graves Amendment preempt Plaintiff's negligence claims against Convoy, it denies Convoy's motion for summary judgment as to these counts.

### P&G's MOTION FOR SUMMARY JUDGMENT

The Court next addresses P&G's motion for summary judgment, which raises similar, but not identical arguments as those Convoy raised. The Court holds that Plaintiff's claims against P&G are not preempted and that her direct negligence claims against P&G must proceed to trial. P&G is entitled to summary judgment as to Plaintiff's vicarious liability claims, however.

### I.     PREEMPTION AS TO P&G

As explained above, P&G shipped the goods that Estrada was carrying when he collided with Figueroa's vehicle. P&G conceded at oral argument that it is not arguing that federal law preempts Plaintiff's state law claims against it. Indeed, the FAAAA's preemption provision does not include shippers as covered entities and the Graves Amendment has no relevance to P&G, as P&G did not rent or lease any type of motor vehicle to Prowheeler or Estrada. And given that the Court rejected Convoy's preemption arguments above, there can be no argument that Plaintiff's claims against P&G are preempted insofar as they relate to any negligence on the part of Convoy.[14]

### II.     VICARIOUS LIABILITY AS TO P&G (COUNT SIX)

In Count Six, Plaintiff alleges that P&G is vicariously liable for the alleged negligence of Convoy. The Court concludes that there are no questions of material fact as to Count Six and that P&G is entitled to summary judgment as to this count.

As an initial matter, the Court notes that the text of Count Six alleges vicarious liability pursuant to Conn. Gen. Stat. § 52-183. *See* ECF No. 1-1 at 39. In briefing, Plaintiff concedes that

---

[14] In her opposition to P&G's motion for summary judgment, Plaintiff argues that "[s]ummary judgment is improper where 'reasonable judges could disagree.' *See Marquez v.Amazon.com, Inc*., 592 F. Supp. 3d 1220,1233 W.D. Wash. (2022)." ECF No. 155-1 at 30. The Court was unable to find any case with this specific citation. The reporter citation provided leads to a case from the U.S. District Court for the Southern District of Florida, *Wills v. Walmart Assocs., Inc.*, 592 F. Supp. 3d 1203 (S.D. Fla. 2022). And neither of the two cases titled *Marquez v. Amazon.com, Inc.* that the Court could locate, No. 21-80392-CV, 2021 WL 6060670 (S.D. Fla. Nov. 18, 2021) and *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262 (11th Cir. 2023), include the quotation "reasonable judges could disagree." Plaintiff is encouraged to carefully review her citations in any future briefing.

this statute does not actually apply. *See* ECF No. 155-1 at 27. The parties both analyze Count Six as a claim brought under Connecticut common law. The Court does the same here and incorporates the above standard governing vicarious liability in Connecticut.

Neither party clearly identifies, nor has the Court independently located, any evidence in the record that suggests P&G and Convoy had what amounts to an employer-employee relationship. Thus, the Court's inquiry hinges on whether the control exception to an independent contractor relationship is met. Indeed, Plaintiff comes close to conceding that this alone is the relevant inquiry. *See* ECF No. 155-1 at 23 ("The Plaintiffs' [sic] claim of vicarious liability [as to P&G] relies on this control exception."). The Court concludes that there is no material question of fact as to whether P&G exercised sufficient control over Convoy to be vicariously liable in this case. It did not.

Again, a starting point is the clear contracting language of the parties. P&G has submitted its executed Master Purchase Agreement with Convoy, ECF No. 139-1 at 54–69. In that Agreement, the parties explicitly contracted to be independent contractors. *Id.* at 62. The language confirming this status is abundantly clear: "The PARTIES are independent contractors with respect to each other, and nothing in this AGREEMENT will be construed to place the PARTIES in the relationship of partners, joint ventures, fiduciaries or agents." *Id.* Under this section, neither party had any authority to create an obligation or bind the other. *Id.* In addition, P&G had "no labor relationship with right, power, authority or duty to select, hire, manage, discharge, supervise or direct any of [Convoy's] employees, agents, subcontractors or their employees." *Id.*

The record otherwise fails to indicate that P&G exercised sufficient control over Convoy such that the control exception would apply. While the evidence shows P&G used Convoy frequently, *see, e.g.*, ECF No. 165 at 213, Plaintiff fails to connect how the simple fact of a past

pattern of business makes it any more likely that P&G exercised any control over Convoy within the meaning of the control exception.  Nor does Plaintiff identify any portions in the record that identify any control that P&G actually exerted over Convoy in practice.

Additionally, Plaintiff's argument that P&G retained control over Convoy in its contract, ECF No. 155-1 at 25, fails as a matter of law.  It is true that a party may be vicariously liable for another where it "reserve[s] in [the] contract general control over the contractor or his servants, or over the manner of doing the work."  *Gonzalez*, 341 Conn. at 683.  And here, the clauses that Plaintiff points to in the P&G's Carrier Playbook, ECF No. 158 at 14–15, do show terms by which P&G expects carriers to abide, such as transportation standards of care.  But while all contracts have terms, not all contracting parties are vicariously liable for the negligence of their counterparty.  And the portions identified by Plaintiff do not carve out or reserve "general control."  *See Gonzalez*, 341 Conn. at 683.  To the extent the clauses carve out any discretion on the part of P&G, it is discrete in scope.  *See* ECF No. 158 at 14 ("Exceptions or waivers to these guidelines due to minimal risk profiles or local legal regulations are to be handled on a case-by-case basis with consult from Global Security.").  Thus, the Court cannot conclude that P&G exercised contractual control over Convoy within the meaning of the control exception.

For these reasons, P&G's motion for summary judgment is granted as to Count Six.

## III.    NEGLIGENCE AS TO P&G (COUNT FIVE)

Finally, the Court concludes that there are questions of material fact as to whether P&G was directly negligent.  The Court therefore denies P&G's motion for summary judgment as to Plaintiff's direct negligence claim in Count Five.

Count Five alleges that P&G was directly negligent in its hiring, qualifying, training, entrusting, supervising, and retaining of Convoy as its broker.  ECF No. 1-1 at 36–39.  Plaintiff

alleges that P&G was negligent in failing to have policies and procedures in place to monitor shipping operations and that it, more specifically, failed to ensure that Convoy hired drivers that met applicable safety standards. *Id.* at 37.

As discussed above, it is true that a defendant generally may not be held liable for the acts of its independent contractor. One of the several exceptions to this doctrine, however, is that a defendant may be liable if it employed "an incompetent or untrustworthy contractor." *Szestowicki v. Carlone*, No. CV000074207, 2003 WL 22293191, at *1 (Conn. Super. Ct. Sept. 23, 2003) (citing *Pelletier*, 264 Conn. at 517–18). The parties do not contest that P&G had a duty to non-negligently select a broker, even a broker categorized as an independent contractor. Thus, the Court analyzes whether there are any questions of material fact as to a breach of this duty.

P&G fails to carry its burden to show, as a matter of law, that it has not breached such a duty. Its argument boils down to two points: (1) it cannot be liable as a matter of law because it did not hire Convoy, because Convoy was not P&G's employee, and (2) Convoy was P&G's independent contractor, and a defendant is not liable for the negligence of an independent contractor. P&G's Br., ECF No. 139-1 at 14–15. Both of these arguments fail to eliminate material questions of fact as to P&G's alleged negligence.

First, P&G's argument that it did not hire Convoy as an employee misses the point that under Connecticut law, a defendant may be directly liable for hiring an incompetent or untrustworthy independent contractor. *See Szestowicki*, 2003 WL 22293191, at *1. Second, P&G's related argument that it cannot be liable for the negligence of an independent contractor and that Convoy was, in fact, P&G's independent contractor similarly fails to acknowledge the duty that is applicable here, to non-negligently select an independent contractor. Even if the Court

accepts the argument that Convoy was P&G's independent contractor, P&G has simply begged the question of whether it negligently selected Convoy as its independent contractor.

P&G has failed to point to evidence in the record that demonstrates there is no question of material fact as to whether P&G breached its duty to non-negligently select a broker. Thus, its summary judgment motion as to Count Five is denied.

## PLAINTIFF's MOTION TO SUPPLEMENT HER OBJECTION

After briefing had been completed on the two instant motions, Plaintiff filed a motion to supplement her objection to Convoy and P&G's motions for summary judgment with deposition testimony from her trucking expert, Lew Grill. ECF No. 199. Plaintiff acknowledges that Grill provided a report and affidavit in connection with her original objection, *see* ECF No. 173, but contends that the deposition testimony will provide essential details going to important issues in this case. Convoy and P&G opposed the motion on timeliness grounds, arguing that before Plaintiff filed her opposition briefs, Grill's deposition was already noticed. *See* ECF No. 205. Accordingly, these Defendants argue that Plaintiff should have anticipatorily asked to supplement the record upon receipt of the deposition transcript, before briefing had concluded.

The Court grants Plaintiff's motion. The Court queried counsel for Convoy and P&G at oral argument as to what the prejudice of the Court admitting Grill's testimony would be. Counsel initially replied that the lack of a chance to respond to the testimony would be prejudicial, but when given a chance to respond at oral argument, counsel did not advance any new arguments; instead, she simply stated that the argument that Convoy is also a motor carrier, a topic of focus in the testimony, is already addressed in the parties' briefing. The Court finds this argument unpersuasive as a ground for not admitting the testimony particularly where, as here, Convoy and

P&G moved for summary judgment well before the close of discovery. The Court notes, however, that the addition of the testimony does not change any of the Court's analysis in this ruling.

## **CONCLUSION**

For the reasons described herein, the Court GRANTS IN PART AND DENIES IN PART Convoy's motion for summary judgment. Convoy is entitled to summary judgment as to Counts One and Thirteen for vicarious liability, but Counts Two and Three, Plaintiff's direct negligence claims, must proceed to trial. The Court also GRANTS IN PART AND DENIES IN PART P&G's motion. P&G is entitled to summary judgment as to Count Six, for vicarious liability, but Count Five, a direct negligence claim, must proceed to trial. Finally, the Court grants Plaintiff's motion to supplement the record, ECF No. 199.

**SO ORDERED** at Hartford, Connecticut, this 25th day of July, 2025.


      _/s/ Sarala V. Nagala_____
      SARALA V. NAGALA
      UNITED STATES DISTRICT JUDGE